IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TANGELA D. GLENN, | ) |
| *for T.L.G.* | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:08cv700-WC |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Tangela D. Glenn filed this lawsuit on behalf of her daughter, T.L.G ("TLG"),[1] to review a final judgment by defendant Michael J. Astrue, Commissioner of Social Security, in which he determined that TLG is not "disabled" and therefore, not entitled to supplemental security income benefits. Plaintiff's application was denied at the initial administrative level.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner.[2]  *See Chester v. Bowen*, 792

---

[1] Pursuant to the E-Government Act of 2002, as amended on August 2, 2002, and M.D. Ala. General Order No. 2:04mc3228, the court has redacted the plaintiff's minor child's name throughout this opinion and refers to her as TLG.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to

F.2d 129, 131 (11th Cir. 1986). The parties have consented to the undersigned United States Magistrate Judge rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. The court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

For the reasons that follow, the Court concludes that the Commissioner's decision denying TLG supplemental security income benefits should be AFFIRMED.

## II. STANDARD OF REVIEW

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 includes the standard for defining child disability under the Social Security Act. *See* PUB. L. NO. 104-193, 110 Stat. 2105, 2188 (1996). The statute provides that an individual under 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1999).

The sequential analysis for determining whether a child claimant is disabled is as follows:

> 1. If the claimant is engaged in substantial gainful activity, he is not disabled.
>
> 2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.

---

Social Security matters were transferred to the Commissioner of Social Security.

>   3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). In reviewing the Commissioner's decision, the court asks only whether the ALJ's findings concerning the steps are supported by substantial evidence. *See Brown v. Callahan*, 120 F.3d 1133 (10th Cir. 1997).

## III.   STATEMENT OF THE ISSUES

Plaintiff raises three issues for this Court's review: (1) whether the ALJ committed legal error at step three of the evaluation process; (2) whether the ALJ erred by rejecting the medical opinions expressed by Dr. McCleod; and (3) whether the ALJ erred by determining that TLG's mental impairments imposed no limitation in the domain of self-care. The Court will address each of these issues in turn.

## IV.   DISCUSSION

### A.   Whether the ALJ committed legal error at step three of the evaluation process.

Plaintiff argues that "the Commissioner's decision should be reversed, because the ALJ committed legal error at step three of the evaluation process that prevents the support of substantial evidence." Pl.'s Brief (Doc. #15) at 10. Plaintiff identifies two specific errors in the ALJ's evaluation process: (1) the "ALJ should [have] obtain[ed] an updated medical opinion from

a medical expert where additional medical evidence [was] received that could modify the state agency medical consultant's finding that the impairment(s) was not equivalent in severity to any impairments in the Listing of Impairments;" and (2) the ALJ failed "to provide meets or medically equals rationale." *Id*. at 12-13.

### 1. Updated Medical Opinion

Plaintiff argues that the ALJ was required to get updated medical information upon receiving Dr. McCleod's (TLG's treating psychiatrist) opinions of 22 August 2006, concerning the limitations imposed by TLG's mental impairments, which were received by the ALJ after the non-examining DDS physician (Dr. Simpson) reviewed the evidentiary record. Pl.'s Brief (Doc. #15) at 12. Plaintiff relies on SSR 96-6p. to argue that the ALJ was required to order an updated medical opinion when he received the additional medical evidence.

SSR 96-6p requires an ALJ to obtain an updated medical opinion from a medical expert "[w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."  Thus, the requirement to order an updated medical opinion in this case was subject to whether the additional evidence, in the opinion of the ALJ, would have changed Dr. Simpson's findings.

It is clear from his opinion that the ALJ did in fact review and consider the updated

medical opinions and found them insufficient to warrant an updated medical opinion.[3]  As the Commissioner rightly argues, "Dr. McCleod's subsequent treatment records contained little new information."  Comm.'s Brief (Doc. #18) at 10 ("For instance, Dr. McCleod assigned GAF scores of 65 before and after Dr. Simpson issued his opinion (Tr. 154, 156, 160). Her diagnoses also did not change (Tr. 157, 163).  From May through August 2006, Dr. McCleod consistently observed that Plaintiff was cooperative and oriented, with appropriate insight, good judgment, intact memory, average intelligence, and no unusual thought content (Tr. 155, 157, 159, 161, 163).").

Thus, because the ALJ was not of the opinion that the additional medical evidence might change Dr. Simpson's findings, he was not required to "obtain an updated medical opinion from a medical expert." SSR 96-6p.  The Court finds the ALJ's determination is supported by substantial evidence and, thus, no error occurred.

**2.     Meets or medically equals rationale.**

Plaintiff argues the ALJ erred at step three of the evaluation process "by neglecting to provide meets or medically equals rationale." Pl.'s Brief  (Doc. #15) at 12.  Plaintiff concedes the ALJ provided rationale with respect to the functionality findings, but argues the ALJ failed to evaluate each tier of step three individually.  Plaintiff relies on *Ellington v. Astrue*, 2008 WL 1805435, *8 (M.D. Ala. April 18, 2008 ) (Coody, J.), in which the court stated "[s]tep three's three-tiered approach requires the ALJ to evaluate each tier individually

---

[3] The ALJ discussed Dr. McCleod's treatment notes of 22 August 2006 and their seeming inconsistencies. (Tr. 20); *see also*, (Tr. 21) (ALJ discussing Dr. Mcleod's treatment notes of late 2006 and early 2007).

to determine whether [claimant] meets, medically equals, or functionally equals the Listings."

The Court agrees with Plaintiff that is was error for the ALJ to fail to discuss the individual analysis required under step three. The Commissioner stops short of admitting error, but insists that remand is unnecessary because the error did not effect the ALJ's ultimate decision. Comm'r. Brief (Doc. #18) at 10. The Court agrees with the Commissioner that remand is unnecessary.

In *Ellington*, the plaintiff put forth multiple listings which she believed applied to her child's condition. *Ellington*, 2008 WL 1805435 at *8. The court in *Ellington* agreed with plaintiff, based on the evidence in the record, that her child may have met or equalled one of the Listings. *Id*. Because it appeared the child in *Ellington* met or equaled one of the Listings, and the ALJ had failed to articulate his reasons for finding that she did not, the court was unable to review the decision to determine whether the ALJ's decision was supported by substantial evidence. *Id*. Furthermore, in *Ellington* the court held that even if the ALJ had properly completed the first two tiers of the three-step analysis, that "at a minimum, the ALJ's analysis at the third tier of step three that [claimant] does not 'functionally equal' the Listings is flawed and not supported by substantial evidence." *Ellington*, 2008 WL 1805435 at *8. Thus the court determined remand was necessary. *Id*.

The present case is distinguishable because substantial evidence supports the ALJ's functionality findings. Further, a review of the record reveals that, unlike *Ellington*, the record evidence does not support a finding that TLG met or equaled any of the Listings. Indeed, Plaintiff does not even suggest a Listing that TLG may meet, and Plaintiff's only

challenge to the functionality finding is to make the unsupported assertion that the ALJ's determination lacks substantial evidence. Pl.'s Brief (Doc. #15) at n. 3.  It is not the job of the Court to suppose an argument on Plaintiff's behalf.  If Plaintiff believed TLG met, medically equalled, or functionally equaled one of the Listings, then she should have put forth the Listing and arguments in support.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[C]laimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of h[er] claim.").

This Court has reviewed the determination by the ALJ and consulted the Listings and finds that, although the ALJ failed to specify the Listings he considered, because substantial record evidence supports the ALJ's finding that TLG did not meet or medically equal a Listing, remand is improper.  *See Turberville ex rel. Rowell v. Astrue*, 316 Fed. App'x 891, 893 (11th Cir. 2009) (finding that "though the ALJ did not explicitly discuss why [Claimant] did not actually meet Listing 112.05 - substantial record evidence supports that [Claimant's] condition did not actually or functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that [Claimant] was not disabled," making remand unnecessary).

**B.   Whether the ALJ erred by rejecting medical opinions expressed by Dr. McCleod.**

Plaintiff argues the ALJ's rejection of Dr. McCleod's opinion "that TLG's mental impairments imposed marked limitation of function in the domain areas of interacting and relating with others and caring for herself" was reversible error.  Pl.'s Brief (Doc. #15) at 13.

The opinion of a treating physician "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41

(11th Cir. 2004)(substantial evidence supported ALJ decision to give less weight to opinion of treating physician; remanded on other grounds) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "'Good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (citing *Lewis*, 125 F.3d at 1440). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id*. (citing *Lewis*, 125 F.3d at 1440).

In this case, the ALJ articulated "good cause" for affording Dr. McCleod's opinion little weight. Specifically, the ALJ stated that he afforded McCleod's opinion little weight because it was inconsistent with her own treatment records (Tr. 17, 21), and was not supported by the record (Tr. 17, 24). As the Commissioner correctly notes, despite Dr. McCleod's opinion that TLG suffered from marked limitations, her treatment notes reveal that: TLG's behavior was "appropriate" or "appropriate, cooperative," (Tr. 151, 153, 155, 157, 159, 161, 163); she exhibited "appropriate" judgment, "good" insight, and "average" intelligence (Tr. 153, 155, 157, 159, 161, 163); and her GAF scores of 65 (Tr. 154, 156, 160), were consistent with mild symptoms and not marked limitations. *See* Comm'r Brief (Doc. #18) at 14. Further, the ALJ also noted that there was no medically acceptable evidence to support Dr. McCleod's opinion and that Dr. McCleod's conclusions were based on "clinical history" rather then her own observations. (Tr. 22, 24).

This Court agrees with the ALJ that Dr. McCleod's opinions are inconsistent with her

own treatment notes and contrary to the medical record evidence in this case. The ALJ properly articulated "good cause" for affording Dr. McCleod's opinion little weight, and his decision is supported by substantial evidence.

    **C.**    **Whether the ALJ erred by determining that TLG's mental impairments imposed no limitation in the domain area of self-care.**

Plaintiff argues that the ALJ's "obvious" error in finding that TLG suffered no marked limitations in the domain of self-care requires reversal. Plaintiff relies on what she claims to be record evidence of TLG's suicidal tendencies, violence towards others, and other such behavioral problems. *See* Pl.'s Brief (Doc. #15) at 16.

In discussing this domain, the ALJ stated "there was no allegation of a limitation in this area, and no medical findings based on medically acceptable clinical or diagnostic techniques that would warrant a finding that a limitation exists." (Tr. 24). The allegations that Plaintiff now asserts are not medical findings, but are based on her own reporting that TLG exhibited suicidal ideation. (Tr. 167). However, the ALJ did not find Plaintiff to be entirely credible.[4] *See* (Tr.16). Even Plaintiff's reporting of the threats of suicide reveal that such threats were only made when TLG "gets mad and doesn't get her way" (Tr. 167). Additionally, these threats, and those of physical violence are not corroborated by the medical evidence in the record. In fact, the record of self-care in this case led the ALJ to conclude that "the evidence does not indicate that the claimant was anything but independent in her activities of daily living." (Tr. 24).

---

[4] Plaintiff makes no discrete challenge to the ALJ's credibility determination.

Accordingly, Plaintiff has failed to show any error in the ALJ's determination that TLG does not show limitations in the domain of self-care.

## VI.    CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

DONE this 22nd day of September, 2009.

>    /s/ Wallace Capel, Jr.
>    WALLACE CAPEL, JR.
>    UNITED STATES MAGISTRATE JUDGE